**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CASE NO.:**

HUNTER SEABORN MACKENZIE BLACK,

    Plaintiff,

      v.

ROBERT J. PERRAULT, JR.,

    Defendant.

                                       /

## COMPLAINT

Plaintiff, Hunter Seaborn Mackenzie Black ("H. Black"), by his undersigned counsel, sues Defendant, Robert J. Perrault, Jr. ("Perrault"), and alleges:

## INTRODUCTION

1.    This is a case involving a coordinated and calculated effort by Perrault – a detective in the Bureau of Insurance Fraud for the Florida Department of Financial Services, Criminal Investigations Division ("DFS") – to substantially cause H. Black to be criminally prosecuted ***in a felony case*** for:

    (a)    Impersonating a public adjuster;

    (b)    Insurance fraud less than $20,000; and

    (c)    Unlicensed contracting – construction insurance claim less than $20,000.

2. H. Black is an independent contractor for a roofing company, whose professional responsibilities substantially involved sales, as well as assisting a roofing company with signing up potential customers that suffered hurricane damage to their roofs. The customers have property damage coverage under their homeowners' insurance policies with various insurers authorized to do business in the State of Florida. During the time period at issue, H. Black was around 27 years old.

3. Nevertheless, Perrault believed H. Black's sales activities were criminal in nature, and, on behalf of DFS, persuaded the Office of the State Attorney for Hernando County, Florida to prosecute H. Black for serious felony crimes. In total, H. Black faced significant time in prison for crimes he did not commit, that were orchestrated by Perrault on behalf of DFS, and were based on false facts.

4. In reality, the factual bases for the felony criminal charges all stemmed from an egregiously faulty investigation under the ultimate authority of DFS. This investigation was nothing more than a house of cards waiting to collapse under DFS' watch. The DFS probe involved instances where Perrault fabricated facts in an investigative report, appeared to pressure or persuade a homeowner into believing she was a victim of fraud, and intentionally misled the prosecuting attorney into believing H. Black committed felony crimes. To be sure, the criminal case should never have been filed.

5. Perrault's DFS investigation deprived H. Black of his liberty and was financially detrimental to his reputation in the roofing industry. Perrault thus acted with an evil intent or callous or reckless indifference to federally protected rights, which can also be inferred based on the below conduct. During Perrault's utterly fallacious investigation, DFS failed to

[90177.001/5776705/1]                                    2

properly supervise him and was at least negligent in the H. Black investigation. The underlying criminal case discussed below was styled *State of Florida v. Hunter Seaborn Mackenzie Black*, Case No. 2024CF000956, which was pending in Hernando County, Florida (the "Criminal Case").

6.      Part of the duties of DFS and Perrault are to investigate potential instances of insurance fraud and to refer such cases to the Office of the State Attorney for the applicable counties for review and prosecution. Instead of targeting individuals that are engaging in insurance fraud, Perrault caused DFS to focus resources on H. Black to falsely accuse him of participating in an insurance fraud scheme. DFS let Perrault run amok regarding the H. Black investigation, which was itself tortious.

7.      Based on the deceptive, appalling, horrendously dishonest, and false investigation conducted by Perrault, on behalf of DFS, the State of Florida filed and continued to prosecute H. Black for a significant period of time for alleged criminal conduct that had no bases in reality.

8.      Perrault's goal was to, upon information and belief, curry favor with the insurance industry for his own professional benefit. Perrault's vendetta against H. Black resulted in the dissemination of materially false information to the Office of the State Attorney for Hernando County, Florida that DFS should have known was false and/or lacked serious merit, but nevertheless was used and resulted in H. Black being prosecuted for felony crimes where the penalties were significant time in prison.

9.      Eventually, the true facts were uncovered as part of the discovery process in the Criminal Case. Recognizing the case had zero merit and was based on highly improper

[90177.001/5776705/1]                                         3

investigative work by Perrault, on behalf of DFS, the State of Florida quickly filed a Notice of *Nolle Prosequi* to abandon and dismiss the action. The case should never have been filed in the first place. Indeed, the Criminal Case resulted in a final termination on the merits because the State learned no evidence existed to support the continued prosecution of this matter.

10.    DFS was at least negligent in its investigation and failure to properly supervise its detective. Perrault is liable to H. Black for malicious prosecution. Due to Perrault's wrongful conduct, H. Black incurred significant damages.

## JURISDICTION, PARTIES, AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 since this case is a civil action arising under the Constitution, laws, or treaties of the United States.

12.    Plaintiff, H. Black, is an individual who resides and is domiciled in Pinellas County, Florida and is otherwise *sui juris*.

13.    Defendant, Perrault, is an individual who, upon information and belief, resides and is domiciled in Pasco County, Florida and is otherwise *sui juris*. Perrault's actions arose and occurred during his DFS investigation of H. Black. For purposes of completeness, DFS, currently a non-party, is a Florida governmental agency, whose principal location is in Tallahassee, Florida, but also conducts substantial business in the Middle District of Florida.

14.    Venue is proper in the United States District Court for the Middle District of Florida under 28 U.S.C. § 1391(b)(1)-(2), because it is where the claims accrued, where the alleged criminal prosecution occurred, where a substantial part of the events giving rise to the claims occurred, where H. Black and Perrault reside, and where many of the witnesses also reside and/or do business.

[90177.001/5776705/1]                    4

15.    All applicable conditions precedent to the filing of this lawsuit have been performed, waived, excused, or satisfied.

16.    H. Black retained the undersigned counsel to represent his interests in connection with the above-captioned case, and is obligated to pay undersigned counsel reasonable attorneys' fees and costs for services rendered.

## GENERAL ALLEGATIONS

A.    **PROPERTY LOSS DUE TO HURRICANES IS A FREQUENT  OCCURRENCE IN THE STATE OF FLORIDA.**

17.    It is not a secret that property damage insurance claims are prevalent in Florida due to the occurrence of hurricanes, floods, and other storm-related events.

18.    Property owners rely on their insurance companies and the policies purchased as life preservers after problems occur, and certainly after disasters strike.

19.    In recent years, Florida experienced an increase in extreme weather events that damage residential[1] and commercial properties.

20.    Studies suggest the types of storms Florida has experienced will become "more frequent and intense."[2]

21.    Homeowners usually purchase and pay premiums for insurance that is designed to "provide[] financial protection against loss due to disasters, theft and accidents" and that "pays to repair or rebuild your home if it is damaged or destroyed by fire, hurricane, hail,

---

[1] The Climate Reality Project, "Climate Change and Florida: What You Need to Know" (Oct. 16, 2018), *available at* https://www.climaterealityproject.org/blog/how-climate-change-affecting-florida.

[2] Environmental Protection Agency, "Climate Change Indicators: Weather and Climate," *available at* https://www.epa.gov/climate-indicators/weather-climate.

lightning or other disasters listed in your policy."[3] Homeowners are advised by both insurers and by the State to purchase enough coverage to rebuild your home.[4]

22.    Home repair after a storm is a high priority.  A home may be a resident's largest lifetime investment. Damage to a home can grow worse with neglect, which affects the building's structural integrity, and permits the development and growth of dangerous, health-threatening mold, carcinogens, or spores. Such damage also increases the vulnerability of the structure to milder weather events.

23.    Storms can remove shingles from roofs, damage walls or siding, and break windows. After a home is damaged, homeowners are often advised to document the damage as soon as possible, which is especially important if a homeowner's insurance policy only covers certain types of damage.

24.    To do so, the Florida Department of Financial Services advises consumers to first "obtain[] a repair estimate from a licensed contractor" to determine if "the damage exceeds your deductible by an amount that you believe to be sufficient to justify filing a claim with your insurance company, [and] then do so as soon as possible."[5]

---

[3] Insurance Information Institute, "What is covered by standard homeowners insurance?," *available at* https://www.iii.org/article/what-covered-standard-homeowners-policy.
[4] Florida Dep't of Financial Services, "Homeowners' Insurance: A Toolkit for Consumers," at 3 (*available at* https://www.myfloridacfo.com/docs-sf/consumer-services-libraries/consumerservices-documents/understanding-coverage/consumer-guides/english---homeowners-insurance- toolkit.pdf?sfvrsn=1a17d80c_21)
[5] *Id.* at 29.

[90177.001/5776705/1]                              6

**B.     HOMEOWNERS' RIGHTS AND THE USE OF ASSIGNMENT OF BENEFITS CONTRACTS ARE STATUTORILY PROTECTED RIGHTS IN FLORIDA.**

25.     Prior to their repeal, Assignment of Benefits ("AOB") agreements did serve a functional purpose for homeowners. In fact, the Florida Legislature believes homeowners' rights are so critical that it codified a Homeowner Claims Bill of Rights (the "Homeowner Bill of Rights) into law, which is set forth in Section 627.7142 of the Florida Statutes.

26.     While the Homeowner Bill of Rights is not intended to list every right recognized under Florida law, it does state homeowners generally have the statutory right to choose the contractor that repairs damage to a home with respect to an insurance claim.

27.     In this connection, AOBs were frequently used in the property damage industry to make the claims process more efficient for the homeowner and the contractor. Fundamentally, an AOB is a written agreement that permits an insured to voluntarily assign his or her rights and insurance benefits to a third-party contractor.

28.     Once signed, the contractor "steps into the shoes" of the policyholder and allows the contractor (i) to discuss the insurance claim with the carrier; (ii) to bill the insurer directly for work performed and materials furnished for the benefit of the insured; (iii) to be paid directly by the carrier; and (iv) if necessary, commence an action against the insurance company to collect amounts due and owing to the contractor.

29.     AOBs were used for a long time, especially during emergency weather situations. In Florida, AOBs were prevalent in the residential property context when homeowners suffer damage to their home and need to hire contractors to repair the issues.

30.     When damage does occur, immediate remediation is often required to protect against further storms, water leakage, or other types of damage and allows a homeowner to continue to reside on the property while preventing further serious damage to the home.

31.     AOBs are regulated in Florida pursuant to Section 627.7152 of the Florida Statutes, among others. This statute became effective in 2019.

32.     Homeowners typically exercised their AOB rights under their insurance contracts so the contractors making the repairs could handle the claim without the need for a homeowner's constant involvement with the insurance company, an approach that many homeowners found preferable.

33.     Many homeowners lack extensive familiarity or experience with the claims process, which can be daunting and stressful. AOBs also allowed repairs to be made without the homeowner fronting the cost of the remediation and then seeking reimbursement from insurers. Pursuant to the AOB, a contractor "stepped into the shoes of the homeowner" and had the right to file a lawsuit against a carrier regarding an insurance claim.

**C.      DFS AND PERRAULT CONDUCTED THE INVESTIGATION THAT RESULTED IN A FELONY PROSECUTION AGAINST H. BLACK.**

34.     Any assertion that H. Black participated in or was connected and intricately intertwined with an insurance fraud scheme is categorically false.

35.     Upon information and belief, after Perrault learned H. Black was successful in his industry and at the behest of a certain insurance carrier, he proceeded to harm H. Black's freedom and his livelihood. Perrault has a history of engaging in alleged dishonest acts in his professional capacity.

[90177.001/5776705/1]                              8

**(i)     The "Investigation" that Led to the Criminal Prosecution.**

36.     The investigation of H. Black involved acts that allegedly occurred on August 11, 2022. In this connection and on this date, H. Black was an independent salesman for a licensed roofing contractor. H. Black neither held a roofing contractor license nor a public adjuster license. It was alleged in the Criminal Case that H. Black at his residence located at 8768 Fetterbush Court, Brooksville, Florida 34613 (the "Property"). Crosier owned the Property and had residential property insurance through Olympus pursuant to a policy with an effective date that was during the date of loss that occurred with respect to Crosier's Property.

37.     The DFS Affidavit that memorialized the purported "facts" of the investigation are below. ***Significantly, the material facts were ultimately refuted as false during discovery in the subsequent Criminal Case involving this Property***.

38.     The Affidavit stated on August 111, 2022, Crosier was solicited by H. Black on behalf of a roofing contractor. Additionally, the Affidavit also stated the following: (a) H. Black inspected the roof and indicated the roof inspection revealed significant damage to the roof requiring a complete replacement; (b) Crosier was assured her insurance company would pay for it; (c) H. Black exaggerated existing imperfections to the roof and requested the homeowner's insurance policy information; (d) H. Black stated Crosier's roof would be replaced if Crosier submitted an insurance claim to Olympus; (e) H. Black presented an AOB form for Crosier to sign; (f) H. Black presented himself as a "public adjuster"; (g) the Olympus claim was initiated by H. Black and represented himself as a "contractor"; (h) H. Black

inspected the roof; (i) H. Black acted as a public adjuster without a license; (j) H. Black initiated a fraudulent homeowner's insurance claim for a roof replacement; (k) H. Black acted as a contractor even though he did not have a roofing contractor license; and (l) H. Black told Crosier the specific details about the roof damage.

39.    The supposed "facts" in the DFS Affidavit involving the Crosier Property resulted in the Hernando County State Attorney's Office prosecuting H. Black for impersonating a public adjuster; insurance fraud less than $20,000; and unlicensed contracting – construction insurance claim less than $20,000. A copy of the three-count felony information is attached hereto as **Exhibit A**.

### a.    *The Criminal Prosecution Regarding the Crosier Property Was Based on False Facts.*

40.    During the discovery process, Crosier testified he could not identify and did not identify H. Black as the individual he met. Crosier did not know who got on his roof to inspect or appraise any damage. In fact, Crosier testified during his deposition that H. Black never identified or represented himself to be a public adjuster and she also testified that H. Black never stated to him, represented, or held himself out as a licensed roofing contractor. If H. Black was the individual Crosier met, he was simply an independent salesman acting on behalf of a licensed roofing contractor.

41.    Moreover, Crosier testified he understood that signing an AOB meant he was assigning his insurance benefits to the roofing contractor and permitting the roofing contractor and its representatives to contact Olympus regarding his roofing claim. There was no dispute AOBs were valid on the date at issue. Likewise, Crosier testified that he actually

gave permission to the roofing contractor to contact his insurance company regarding the claim and was present during the telephone call. During the claim process, Olympus invoked their right to repair and provide coverage for the claim.

42. Perrault was the detective that conducted the "investigation" regarding the Crosier Property and was the author of the Affidavit.

43. Based on the above facts, H. Black filed a Verified Motion to Dismiss the Information regarding the Crosier Property. After the State discovered overwhelming evidence that refuted the felony Information, the State filed a Notice of *Nolle Prosequi*, which is attached hereto as **Exhibit B**.

**D. H. BLACK INCURRED SIGNIFICANT DAMAGES FROM THE CRIMINAL PROSECUTION THAT WAS BASED ON PERRAULT'S FANCIFUL, <u>FALSE,</u> AND SHODDY INVESTIGATION.**

44. Due to the criminal prosecution, H. Black incurred significant attorneys' fees to exonerate himself and endured significant emotional distress.

45. This case seeks to hold Perrault accountable for his malicious conduct that no other reasonable person under the circumstances would have ever pursued.

**CLAIMS FOR RELIEF**

**COUNT I – 42 U.SC. §1983 MALICIOUS PROSECUTION VIOLATION RELATED TO THE CRIMINAL PROSECUTION**

46. H. Black reallege the allegations contained in Paragraphs 1-45 above, as if set forth fully herein.

47. This is an action against Perrault for violation of 42 U.S.C. §1983 ("Section 1983") for malicious prosecution related to the Criminal Case.

48. The nature of this claim involves a violation of the Fourth Amendment to the United States Constitution and is a valid constitutional tort pursuant to Section 1983.

49. There exists a federal right to be free from malicious prosecution, which is a depiction of the right to be free from an unlawful seizure that is a material part of the prosecution.

50. As part of the commencement of the Criminal Case, H. Black was unlawfully and forcibly restrained in violation of the Fourth Amendment, and his injuries due to the seizure naturally flowed from the commencement and continuation of the criminal proceeding for a significant period of time.

51. Perrault, at all times relevant to the First Criminal Prosecution, was a Law Enforcement Detective with the Florida Department of Financial Services, Bureau of Insurance Fraud, and, upon information and belief, is employed by the State of Florida.

52. Perrault acted towards H. Black under the color of the Florida Statutes, ordinances, customs, and usage of the State of Florida, specifically, investigating alleged violations of the Florida Statutes concerning insurance fraud.

53. With regard to the Criminal Case, Perrault acted in his capacity as a Law Enforcement Detective with the Florida Department of Financial Services, Bureau of Insurance Fraud, with full permission by the State of Florida to perform his job functions.

54. Perrault furnished material information, including the DFS Affidavit related to the Criminal Case to the Office of the State Attorney, which improperly influenced its decision to prosecute the Criminal Case. As a result, Perrault was the legal cause of the First Criminal Prosecution against H. Black, who was the defendant in the underlying criminal

[90177.001/5776705/1]                    12

action.

55.     The State filed its Notice of *Nolle Prosequi* in the Criminal Case. The totality of the circumstances set forth above indicated that the Criminal Case amounted to a dismissal on the merits. Therefore, the dismissal constituted a bone-fide termination of the Criminal Case in favor of H. Black.

56.     The filing and continued prosecution of the Criminal Case lacked probable cause. Critically, the Criminal Case had no reasonable prospect of success at its inception and after discovery revealed it was based on false facts.

57.     At all stages of the proceedings, probable cause did not exist to maintain the Criminal Case because the factual bases for the alleged crimes committed were false and not based on any credible evidence.

58.     Further investigation was necessary before Perrault furnished material information, including the DFS Affidavit related to the Criminal Case, to the Office of the State Attorney. Perrault caused the Office of the State Attorney to commence a criminal proceeding based on false facts that could equally be explained innocently.

59.     A reasonable Law Enforcement Detective with the Florida Department of Financial Services, Bureau of Insurance Fraud, would not regard the investigation related to the Criminal Case as tenable if the true facts were revealed. Alternatively or additionally, Perrault unreasonably neglected to investigate the facts before improperly influencing the decision of the Office of the State Attorney to prosecute the Criminal Case. Thus, Perrault's actions were not in good faith and for a legally justifiable reason.

60.     As set forth in great detail above, Perrault's conduct was for improper purposes and without substantial justification.

61.     Perrault acted with actual and legal malice.

62.     H. Black has been damaged as a direct and proximate result of Perrault's malicious conduct related to the Criminal Case. H. Black had to pay substantial attorneys' fees to defend the meritless First Criminal Prosecution, and he also incurred significant emotional distress from the Criminal Case.

WHEREFORE, Plaintiff, H. Black, respectfully requests that this Court enter a judgment against Defendant, Robert J. Perrault, Jr., for compensatory damages, punitive damages based on Perrault's evil intent or callous or reckless indifference to federally protected rights, prejudgment interest, costs, attorneys' fees pursuant to 42 U.S.C. §1988(b), and such other and further relief that this Honorable Court may deem just and proper, including, but not limited to, the remedies set forth in Section 284.30 et seq. of the Florida Statutes.

## DEMAND FOR JURY TRIAL

H. Black demands a trial by jury on all claims so triable, including pursuant to the Seventh Amendment of the United States Constitution.

Dated: June 5, 2025

                           **SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
*Attorneys for Plaintiff*
7777 Glades Road, Suite 400
Boca Raton, FL  33434
Telephone:   (561) 477-7800
Facsimile:   (561) 477-7722

By:   */s/ Joshua B. Alper*
       Joshua B. Alper, Esq.
       Florida Bar No. 59875
       Primary E-Mail: jalper@sbwh.law
       Secondary E-Mail: clanzano@sbwh.law
                     floridaservice@sbwh.law

[90177.001/5776705/1]                    15