**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**HUNTER SEABORN MACKENZIE**
**BLACK,**

     Plaintiff,

v.                                                    Case No. 8:25-cv-01466-WFJ-CPT

**ROBERT J. PERRAULT, JR.** and
**THE FLORIDA DEPARTMENT**
**OF FINANCIAL SERVICES**,

     Defendants.

_____/

## <u>ORDER</u>

Before the Court is Defendant Florida Department of Financial Services'

("DFS") Motion to Dismiss Count II of the Amended Complaint. Dkt. 31. Plaintiff

Hunter Seaborn Mackenzie Black ("Black") has responded in opposition. Dkt. 33.

After careful consideration, the Court grants Defendant's motion to dismiss Count

II.

## BACKGROUND

Plaintiff Black was an independent salesman for a licensed roofing contractor

who conducted door-to-door roofing sales. Dkt. 20 ¶ 39. Defendant DFS is a Florida

agency headed by the State's Chief Financial Officer. *See* Fla. Stat. § 20.121(1).

Within DFS is the Division of Criminal Investigations, which functions as a

"criminal justice agency" and has the authority to initiate and conduct investigations

into matters within the Chief Financial Officer's jurisdiction. *Id.* § 20.121(2)(e). The Bureau of Insurance Fraud, housed within the Division of Criminal Investigations, is a law enforcement agency that investigates violations of Florida's insurance code. Dkt. 20 ¶¶ 1, 6, 54, 70. Defendant Robert J. Perrault, Jr. is a law enforcement officer assigned to the Bureau. *Id.* ¶ 54. Defendant Perrault's duties include "investigat[ing] potential instances of insurance fraud and . . . refer[ring] such cases to the Office of the State Attorney for the applicable counties for review and prosecution." *Id.* ¶ 6.

Plaintiff reports that in August 2022, Defendant Perrault conducted an investigation and ultimately authored an affidavit alleging that Plaintiff impersonated a public adjuster, initiated a fraudulent insurance claim on behalf of a homeowner, and acted as a contractor without a license. *Id.* ¶¶ 39–41. As a result of the allegations in Defendant Perrault's affidavit, the State Attorney's Office for the Fifth Judicial Circuit brought criminal charges against Plaintiff for "impersonating a public adjuster; insurance fraud less than $20,000; and unlicensed contracting – construction insurance claim less than $20,000." *Id.* ¶¶ 1, 5, 42.[1] However, following further discovery and investigation into the charges, *id.* ¶¶ 43–44, the State filed a Notice of *Nolle Prosequi* and dismissed the criminal charges against Plaintiff. *Id.* ¶ 46; *see* Dkt. 20-3 (showing Notice of *Nolle Prosequi*).

---

[1] The underlying criminal case was styled *State of Florida v. Hunter Seaborn Mackenzie Black*, Case No. 2024CF000956, which was pending in Hernando County, Florida. Dkt. 20 ¶ 5.

On June 5, 2025, Plaintiff filed suit, alleging that Defendant Perrault "acted with an evil intent" in conducting a "deceptive, appalling, horrendously dishonest, and false investigation" into Plaintiff with the purpose of "curry[ing] favor with the insurance industry for [Perrault's] own professional benefit." Dkt. 1 ¶¶ 5, 7–8. After providing the required pre-suit notice of claim under Florida Statute § 768.28(6), Plaintiff filed an Amended Complaint adding Defendant DFS to the suit. Dkt. 20 ¶¶ 11–12. In the Amended Complaint, Plaintiff brings a malicious prosecution claim against Defendant Perrault under 42 U.SC. § 1983 (Count I), *id.* ¶¶ 49–65, and a "negligent investigation" claim against Defendant DFS (Count II). *Id.* ¶¶ 66–73. Specifically, Plaintiff claims that Defendant DFS failed "to conduct a diligent and proper investigation into the veracity of the facts related to the [Plaintiff's] Criminal Prosecution, including the information provided by Perrault, to ensure probable cause existed prior to referring [Plaintiff] for prosecution." *Id.* ¶ 72. Defendant DFS now moves to dismiss the "negligent investigation" claim in Count II. *See* Dkt. 31.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the plaintiff is entitled to relief to give the defendant fair notice of the claims and grounds. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court must construe the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citation modified). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).

## DISCUSSION

Defendant DFS claims that Plaintiff's negligent investigation claim in Count II is barred on state sovereign immunity grounds. Dkt. 31 at 4. Specifically, DFS points to the Florida Supreme Court's decision in *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912 (Fla. 1985), arguing that the allegations in the Amended Complaint about DFS's failure to conduct a diligent and proper investigation into the veracity of an employee's charging affidavit fall under the agency's discretionary authority to enforce the laws enacted by the legislature. Dkt. 31 at 6 (citing *Tianon Park*, 468 So. 2d at 919). Because such actions are discretionary, DFS contends it is entitled to sovereign immunity, and the waiver under Florida Statute § 768.28(1) does not apply. *Id.* For the reasons discussed

4

below, the Court agrees that Count II is due to be dismissed, but does not reach the state sovereign immunity question.

While Florida and its subsidiaries, like DFS, are generally immune from tort liability, *see* Fla. Const., Art. X, § 13, this general tort immunity has been waived "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws" of Florida. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (quoting Fla. Stat. § 768.28(1)). As such, "when the state or its subsidiary is sued in negligence, a court must first determine whether the circumstances alleged would subject a private person or business to liability under Florida law." *Mosby v. Harrell*, 909 So. 2d 323, 327 (Fla. 1st DCA 2005). Next, "[i]f a private person or business would be subject to liability under the circumstances alleged, the court must then determine whether the challenged act or acts were 'discretionary' in nature, and not merely 'operational.'" *Id.* (citing *Henderson v. Bowden,* 737 So. 2d 532 (Fla. 1999); *Kaisner v. Kolb,* 543 So. 2d 732 (Fla. 1989)); *see Lewis*, 260 F.3d at 1262–63.

In this case, Plaintiff brings a "negligent investigation" claim in Count II against DFS. *See* Dkt. 20 ¶¶ 66–73. "To state a claim for negligence under Florida law, a plaintiff must allege a duty of care owed by the defendant to the plaintiff, breach of that duty of care, and resulting damages." *Mosby*, 909 So. 2d at 327

(citation omitted). Because the Amended Complaint's factual allegations—accepted as true at this stage—sufficiently allege the required breach and damages elements, *see* Dkt. 20 ¶¶ 71–73, the only issue in dispute is whether a private person in DFS's position would owe a duty of care to Plaintiff in the circumstances alleged in the Amended Complaint. *See Trianon Park*, 468 So. 2d at 917 ("[F]or there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct."). "If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 932 (Fla. 2004).

Here, Plaintiff contends that the duty of care owed by DFS to Plaintiff arose from two separate sources. First, Plaintiff asserts that "DFS has a statutory duty to ensure that 'it has reasonable cause' prior to initiating an investigation against an individual." Dkt. 33 at 5 (quoting Fla. Stat. § 626.601(1)). Second, Plaintiff points to a common law duty under Florida's "zone of risk" doctrine, as Plaintiff was allegedly "placed in a zone of risk by virtue of the utterly fallacious DFS charging affidavit . . . that resulted in the wrongful criminal prosecution." *Id.* at 8. The Court disagrees, as neither of these sources shows that DFS owed a duty of care to Plaintiff.

6

Beginning with the alleged statutory duty, Plaintiff cites to Florida Statute §

626.601(1), which requires DFS to have "reasonable cause" before initiating an

investigation. However, when read in its entirety, this enabling provision permits

DFS to "initiate an investigation of any such individual or entity if it has reasonable

cause to believe that the individual or entity has violated any provision of the

insurance code." Fla. Stat. § 626.601(1); *see also id.* § 624.317(1) ("If it has reason

to believe that any person has violated or is violating any provision of this code . . .

[DFS] shall conduct such investigation as it deems necessary. . ."). This statutory

duty is clearly a codified general duty to enforce the law—namely, Florida's

insurance code—that DFS owes to the general public rather than to an individual.[2]

*See Holodak v. Lockwood,* 726 So.2d 815, 816 (Fla. 4th DCA 1999) (noting that in

government tort suits, plaintiffs must prove that defendant breached a common law

or statutory duty "owed to the plaintiff individually and not a tort duty owed to the

---

[2] In *Trianon Park,* the Florida Supreme Court recognized four general categories of governmental functions and activities that either support or fail to support the recognition of a duty of care between a governmental actor and an alleged tort victim: (I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of public safety; (III) capital improvements and property control operations; and (IV) professional, educational, and general services for the health and welfare of the citizens. *See Trianon,* 468 So. 2d at 919. The *Trianon* Court explained the parameters of governmental responsibility within this framework:

> [T]here is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the discretionary governmental functions described in categories I and II because there has never been a common law duty of care with respect to these legislative, executive, and police power functions, and the statutory waiver of sovereign immunity did not create a new duty of care. On the other hand, there may be substantial governmental liability under categories III and IV.

*Id.* at 921. Here, DFS's law enforcement duties enumerated under Florida Statutes § 624.317 and § 626.601 are clearly category II functions—i.e., the general duty to reasonably investigate violations of Florida's insurance code, which is owed to the public at large, not to any individual.

7

public generally"); *see also Pollock*, 882 So. 2d at 935 ("Patrolling the state highways, controlling the flow of traffic, and enforcing the traffic laws are duties FHP owes to the general public, as opposed to an individual person."). As such, while Plaintiff may be correct that DFS has a statutory duty to ensure its investigations are based on "reasonable cause," Fla. Stat. § 626.601(1), this duty is only owed to the public, not to Plaintiff as an individual. Indeed, Plaintiff's Amended Complaint seemingly admits this fact, stating that "DFS owed a duty to H. Black, *as with all citizens of Florida*, to perform an investigation with diligence to ensure that the investigation is conducted properly with cognizable and truthful facts." Dkt. 20 ¶ 67 (emphasis added).

As to the second alleged duty of care, while the zone of risk doctrine could provide the necessary duty of care, Plaintiff has failed to sufficiently allege facts that would give rise to such a duty. "When a defendant's conduct creates a foreseeable zone of risk, Florida law generally will recognize a duty upon the defendant to either lessen the risk or see that sufficient precautions are taken to protect persons within that zone of risk from the harm that the risk poses." *Mosby*, 909 So. 2d at 327. In the law enforcement context, the Florida Supreme Court has explained that "[a] special tort duty does arise when law enforcement officers become directly involved in circumstances which place people within a 'zone of risk' by creating or permitting dangers to exist, by taking persons into police custody, detaining them, or otherwise

subjecting them to danger." *Pollack*, 882 So. 2d at 935; *see also Wallace v. Dean*, 3 So. 3d 1035, 1047–48 (Fla. 2009) (noting that *Pollack* "outlined . . . [a] disjunctive list of exceptions to the *Trianon* public-duty doctrine" in category II).

Here, an examination of the Amended Complaint shows that none of DFS's actions gave rise to a special tort duty. DFS never took Plaintiff into custody, detained him, or otherwise subjected him to danger. Rather, Plaintiff argues that a zone of risk was created when DFS "fail[ed] to conduct a diligent and proper investigation into the veracity of the facts related to [Plaintiff's] Criminal Prosecution, including the information [in the affidavit] provided by [Defendant] Perrault, to ensure probable cause existed prior to referring H. Black for prosecution." Dkt. 20 ¶ 72; *see* Dkt. 33 at 5. But there are no factual allegations to support this conclusory statement, which the Court need not accept as true. *See Iqbal*, 556 U.S. at 681. Indeed, there are no allegations that DFS discovered evidence establishing the falsity of Defendant Perrault's affidavit to the state attorney's office. Nor are there any facts showing that DFS knew about deficiencies in the charging affidavit and then subsequently failed to notify the prosecuting authority. DFS also never made "a direct representation to" Plaintiff, promising that it would conduct a diligent and proper investigation. *Pollack*, 882 So. 2d at 936. Therefore, as currently pled, Plaintiff has failed to allege that DFS owed any special tort duty to Plaintiff.

Plaintiff's response, however, cites to *Asprilla v. Trinidad*, No. 609-CV-101-ORL-28KRS, 2009 WL 2151156 (M.D. Fla. July 14, 2009), arguing that "filing a charging affidavit would [create] a duty to exercise reasonable care in doing so because it is reasonably foreseeable that as a result of a false charging affidavit, the wrongly accused would be prosecuted." Dkt. 33 at 8 (quoting *Asprilla*, 2009 WL 2151156, at *4). True enough, but the district court in *Asprilla* went on to find that the City of Orlando had "[d]iscover[ed] . . . evidence establishing the falsity of a charging affidavit prior to the prosecuting authority filing charges," which "would create a duty to disclose this evidence either to lessen the risk of, or to protect from, an improper prosecution." *Asprilla*, 2009 WL 2151156, at *4.

Unlike the allegations in *Asprilla*, there are no statements in the Amended Complaint even suggesting that DFS discovered or knew about the alleged falsity in Perrault's affidavit and then failed to notify the prosecuting authority. Instead, Plaintiff claims DFS breached its general duty "to perform an investigation with diligence to ensure that the investigation is conducted properly with cognizable and truthful facts." Dkt. 20 ¶ 67. But, as discussed above, "[t]here is no legal duty of care to the person who is the subject of a criminal investigation," instead, the "duty to protect the public is owed to the public generally." *Bush v. City of Daytona Beach*, No. 6:12-CV-1541-ORL-36, 2013 WL 3209430, at *5 (M.D. Fla. June 24, 2013) (citing *Pritchett v. City of Homestead*, 855 So. 2d 1164, 1165 (Fla. 3d DCA 2003));

10

*see also Everton v. Willard,* 468 So. 2d 936, 938 (Fla. 1985) (recognizing that there is no "common law duty of care owed to an individual with respect to the discretionary judgmental power granted a police officer . . . to enforce the law); *Trianon Park,* 468 So. 2d at 918 (noting there has never been a common law duty to individual citizens for the enforcement of police power functions). Therefore, Plaintiff has failed to allege that a common law duty arose from DFS's alleged failure "to conduct a diligent and proper investigation." Dkt. 20 ¶ 72.

Because Plaintiff has failed to sufficiently allege a duty of care owed with respect to the reported negligent conduct, the Court need not reach the state sovereign immunity question. *See Pollack,* 882 So. 2d at 932. Accordingly, the Court grants DFS's motion to dismiss the negligent investigation claim in Count II without prejudice.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant DFS's Motion to Dismiss Count II, Dkt. 31, is **GRANTED**.

2. Plaintiff Black's negligent investigation claim in Count II, Dkt. 20 at 16, is **DISMISSED without prejudice**.

3. While the Court is doubtful any amended complaint will cure the deficiencies identified in this Order, the Court grants Plaintiff Black's request for leave to amend his complaint under Federal Rule of Civil

11

Procedure Rule 15(a). *See* Dkt. 33 at 17. Any amended complaint is due within **FOURTEEN (14) days** from the date of this Order. If no amended complaint is filed by **April 2, 2026**, Defendant DFS will be terminated from this case, and the remaining count will proceed against Defendant Perrault.

**DONE AND ORDERED** at Tampa, Florida, on March 19, 2026.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

12