UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**HUNTER SEABORN MACKENZIE BLACK,**

     Plaintiff,

v.                               Case No. 8:25-cv-01466-WFJ-CPT

**ROBERT J. PERRAULT, JR.** and
**THE FLORIDA DEPARTMENT
OF FINANCIAL SERVICES**,

     Defendants.

_____/

## <u>ORDER</u>

Before the Court is Defendant Florida Department of Financial Services' ("DFS") Motion to Dismiss Count II of the Second Amended Complaint. Dkt. 40. Plaintiff Hunter Seaborn Mackenzie Black ("Plaintiff") has responded in opposition. Dkt. 41. After careful consideration, the Court grants Defendant's motion to dismiss Count II with prejudice.

## BACKGROUND

Plaintiff was an independent salesman for a licensed roofing contractor who conducted door-to-door roofing sales. Dkt. 35 ¶¶ 3, 36. Defendant DFS is a Florida agency headed by the Chief Financial Officer. *See* Fla. Stat. § 20.121(1). Within DFS is the Division of Criminal Investigations, which functions as a "criminal justice agency" and has the authority to "initiate and conduct investigations" into

matters within the Chief Financial Officer's jurisdiction. *Id.* § 20.121(2)(e). The Bureau of Insurance Fraud is housed within the Division of Criminal Investigations, Dkt. 35 ¶¶ 2, 4, and Defendant Robert J. Perrault, Jr. is a law enforcement officer assigned to the Bureau. *Id.* ¶¶ 5, 21. Defendant Perrault's duties include "investigat[ing] potential instances of insurance fraud and . . . refer[ring] such cases to the Office of the State Attorney for the applicable counties for review and prosecution." *Id.* ¶ 12.

Plaintiff alleges that in August 2022, Defendant Perrault conducted an investigation and authored an affidavit asserting that Plaintiff impersonated a public adjuster, initiated a fraudulent insurance claim on behalf of a homeowner, and acted as a contractor without a license. *Id.* ¶¶ 36–39. As a result of the allegations in Defendant Perrault's affidavit, the State Attorney's Office for Hernando County brought criminal charges against Plaintiff for "[i]mpersonating a public adjuster; [i]nsurance fraud less than $20,000; and [u]nlicensed contracting – construction insurance claim less than $20,000." *Id.* ¶¶ 1, 7, 9.[1] However, following further discovery and investigation into the charges, the State filed a Notice of *Nolle Prosequi*, thereby dismissing the criminal charges against Plaintiff. *Id.* ¶¶ 15, 40–43; *see* Dkt. 35-3 (showing Notice of *Nolle Prosequi*).

---

[1] The underlying criminal case was styled *State of Florida v. Hunter Seaborn Mackenzie Black*, Case No. 2024CF000956, which was pending in Hernando County, Florida. Dkt. 35 ¶ 7.

On June 5, 2025, Plaintiff filed suit against Defendant Perrault. Dkt. 1 at 1, 14. After providing the required pre-suit notice of claim under Florida Statute § 768.28(6), Plaintiff filed an Amended Complaint adding Defendant DFS to the suit. Dkt. 20 ¶¶ 11–12. On March 19, 2026, the Court granted Defendant DFS's motion to dismiss the negligent investigation claim against Defendant DFS, finding "Plaintiff has failed to sufficiently allege a duty of care[.]" Dkt. 34 at 11. Specifically, the Court found that Defendant DFS neither owed a statutory duty nor a special tort duty to Plaintiff based on the factual allegations. *Id.* at 6–11.

In the operative Second Amended Complaint, Plaintiff brings a malicious prosecution claim against Defendant Perrault under 42 U.S.C. § 1983 (Count I), Dkt. 35 ¶¶ 46–62, and a negligent investigation claim against Defendant DFS (Count II).[2] *Id*. ¶¶ 63–71. Plaintiff claims that Defendant DFS "fail[ed] to conduct a diligent and proper investigation into the veracity of the facts related to [Plaintiff's] Criminal Prosecution, including the information provided by Perrault, to ensure probable cause existed prior to referring [Plaintiff] for prosecution." *Id.* ¶ 70. Once again,

---

[2] The only basis for this Court's original jurisdiction is the federal 42 U.S.C. § 1983 claim against Defendant Perrault in Count I. Applying 28 U.S.C. § 1367(a), so long as this Court has original jurisdiction over this case, it also has jurisdiction to consider the state-law claim against Defendant DFS that forms part of the same case or controversy. When "each claim involves the same facts, occurrences, witnesses, and evidence[,] [t]his commonality is sufficient to satisfy" the constitutional case-or-controversy requirement of § 1367(a). *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1566–67 (11th Cir. 1994) (recognizing that the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provides congressional authorization for what was formerly known as pendent party jurisdiction). Here, the § 1983 malicious prosecution claim against Defendant Perrault and the state-law negligent investigation claim against Defendant DFS would clearly involve the same facts, occurrences, witnesses, and evidence.

Defendant DFS moves to dismiss the negligent investigation claim in Count II under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 40.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice" of the claims and their grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). The plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court must "accept the complaint['s] allegations as true," and it must construe the facts in the light most favorable to the plaintiff. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a plausible claim for relief. *Id.* at 678. In other words, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation modified).

4

## DISCUSSION

Defendant DFS argues that while "the Second Amended Complaint includes additional conclusory factual allegations, it ultimately fails to identify any specific facts that could, if true, establish that DFS owed a specialized duty of care to Plaintiff[.]" Dkt. 40 ¶ 5. Further, even if Plaintiff sufficiently alleged a duty of care, DFS claims that sovereign immunity bars recovery. *Id.* at 8–11. Plaintiff disagrees, raising three arguments to defeat Defendant DFS's motion to dismiss: (1) the public duty doctrine does not bar Plaintiff's claim, (2) Defendant DFS placed Plaintiff within a zone of risk via Defendant Perrault's actions, and (3) sovereign immunity does not apply. Dkt. 35 at 7–8, 12, 16. For the reasons discussed below, the Court agrees that Count II should be dismissed with prejudice without reaching either the public duty doctrine or sovereign immunity questions.

### I. Plaintiff Fails to Sufficiently Allege that Defendant DFS Owed Him a Common Law Duty

Negligence claims against a state or its subsidiary can only proceed if the plaintiff sufficiently alleges the existence of a common law or statutory duty that would hold a private person liable. *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009) ("[T]here can be no governmental liability unless a common-law or statutory duty of care existed that would have applied to an individual under like circumstances." (citations omitted)); *see Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) ("When a state or its subsidiary is sued in negligence, a court should first

5

determine whether the circumstances alleged would subject a private person to liability under Florida law." (citations omitted)). Therefore, the Court must determine whether Defendant DFS owed Plaintiff a duty of care. Importantly, there has "never . . . been a common law duty of care" for the exercise of discretionary powers by government officials and employees because such enforcement is "a matter of governance." *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985).[3] Governmental entities may exercise their discretionary powers to enforce compliance with laws through their officials and employees. *See Id.* Discretionary powers include the decision to make arrests. *Id.* at 920.

Still, courts may recognize a duty of care. *Wallace*, 3 So. 3d at 1047. "There are generally four recognized bases for imposing a duty of care: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Id.* (citation omitted). Here, it is clear that (1), (2), and (3) do not apply, *see generally* Dkt. 35, so the Court must determine whether a duty arises from (4) the general facts of the instant case.

---

[3] "The lack of a common law duty for exercising a discretionary police power function must, however, be distinguished from existing common law duties of care applicable to the same officials or employees in the operation of motor vehicles or the handling of firearms during the course of their employment to enforce compliance with the law. In these latter circumstances there always has been a common law duty of care and the waiver of sovereign immunity now allows actions against all governmental entities for violations of those duties of care." *Trianon*, 468 So. 2d at 920 (citation omitted). However, there are no allegations concerning the operation of motor vehicles or the handling of firearms in the instant case. *See* Dkt. 35. Therefore, these exceptions are not relevant.

"To better clarify the concept of governmental tort liability," government functions and activities may be categorized as "(I) legislative, permitting, licensing, and executive officer functions; (II) enforcement of laws and the protection of the public safety; (III) capital improvements and property control operations; [or] (IV) providing professional, educational, and general services for the health and welfare of the citizens." *Trianon*, 468 So. 2d at 919. Plaintiff makes no claim that categories (I), (III), or (IV) apply. *See* Dkt. 35 ¶ 64 ("As a Law Enforcement Agency within the State of Florida, DFS owed a duty to [Plaintiff.]"); Dkt. 41 at 6 ("Each and all of DFS's law enforcement employee(s) approving and/or involved in the faulty investigation, prosecution, and arrest of [Plaintiff] were negligent[.]"). As it relates to Category II activities, these "are generally owed to the public at large, and thus do not establish a duty owed to specific individuals." *Smith v. Perrault*, No. 8:25-CV-804-KKM-AEP, 2026 WL 1355623, at *3 (M.D. Fla. May 15, 2026) (citation modified).

However, "if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual." *Everton v. Willard*, 468 So. 2d 936, 938 (Fla. 1985); *see also Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 935 (Fla. 2004) ("The responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that person."

(citations omitted)). Law enforcement officers undertake a "special" duty of care when they "become directly involved in circumstances which place people within a 'zone of risk' [1] by creating or permitting dangers to exist, [2] by taking persons into custody, [3] detaining them, or [4] otherwise subjecting them to danger." *Pollock*, 882 So. 2d at 935 (citations omitted).

Plaintiff's Second Amended Complaint does not allege that Defendant DFS had a statutory duty of care toward him. *See* Dkt. 35 ¶ 65 ("DFS had a duty to properly evaluate the veracity of the facts in connection with the First Criminal Prosecution[.]"). Therefore, the Court must determine only whether a common law duty exists. *See Wallace*, 3 So. 3d at 1046 (citations omitted). Specifically, Plaintiff claims that Defendant DFS placed Plaintiff in a zone of risk. Dkt. 41 at 8. The Court disagrees.

A. *Plaintiff fails to sufficiently allege that Defendant DFS placed him within a zone of risk.*

"[C]ourts have rejected extension of the common law 'zone of risk' to cover the initiation of criminal investigations or the submission of materials to prosecuting authorities." *Smith*, 2026 WL 1355623, at *4 (citing *Trujillo v. Fla. Agency for Health Care Admin.*, No. 08-22264-CIV, 2009 WL 10697035, at *5 (S.D. Fla. May 6, 2009) ("finding that 'the zone of risk cases simply do not apply' to allegations that a law enforcement agency's 'reckless and/or deliberately indifferent behavior permitted an illegitimate investigation and criminal prosecution to go forward that

imperiled her employment and reputation'"")). Moreover, "the negligent conduct of police investigations does not give rise to a cause of action because the duty to protect citizens and enforce the law is one owed generally to the public." *Pritchett v. City of Homestead*, 855 So. 2d 1164, 1165 (Fla. 2d DCA 2003). Plaintiff's Second Amended Complaint fails to sufficiently allege that Defendant DFS's actions created an exception (i.e., created a special duty) to these rules by placing Plaintiff within a zone of risk.

First, Plaintiff argues that Defendant DFS placed Plaintiff "in a zone of risk by virtue of the utterly fallacious DFS charging affidavit[,]" Dkt. 41 at 8, which "create[ed] or permit[ed] dangers to exist." *Pollock*, 882 So. 2d at 935. However, Plaintiff has made no *factual* allegations that DFS actually discovered or always knew the affidavit was false; instead, the Second Amended Complaint summarily alleges that DFS must have known the affidavit was false because Defendant Perrault knew it was false. *See* Dkt. 35 ¶ 65 (alleging only that "DFS, through its detectives and personnel . . . all knew [Plaintiff's] Criminal Case was based on false facts and that the information submitted . . . was also false"); Dkt. 41 at 3 (arguing that "Perrault and his DFS colleagues caused DFS to focus resources on [Plaintiff] to falsely accuse him"). But Florida law is clear that a general duty becomes a special duty only when factual allegations show the employer became aware of circumstances giving rise to a duty to act non-negligently. *See Glenney v. Forman*,

936 So. 2d 660, 662 (Fla. 4th 2006) (finding that the Clerk of Court's general "duty to [the plaintiff] became a special duty to act non-negligently once the Clerk's office became aware of the mistake in naming her as the criminal defendant and failed to correct it[,]" especially when the plaintiff and "the prosecutor both explained to the [in-court clerk] that [the plaintiff] was the victim in the battery case, not the criminal defendant").[4] As such, Plaintiff's conclusory allegations are insufficient to overcome Defendant's motion to dismiss. *See Roman v. Perrault*, No. 8:25-CV-1261-WFJ-CPT, 2026 WL 936528, at *3 (M.D. Fla. Apr. 7, 2026) (holding that without "facts showing that DFS knew about deficiencies in the charging affidavit and then subsequently failed to notify the prosecuting authority" or that DFS "made a direct representation to Plaintiff," Plaintiff "failed to allege that DFS owed any special tort duty to Plaintiff" (citation modified)).

In fact, Plaintiff makes hardly any changes from his initial to amended complaints other than the addition of broad, conclusory statements that constitute little more than "[t]hreadbare recitals of the elements of" a negligent investigation claim. *Iqbal*, 556 U.S. at 678 (citation modified). For example, the prior complaint stated, "DFS breached its duty owed to [Plaintiff] by failing to conduct a diligent

---

[4] Relatedly, "Florida courts have never recognized a separate tort for 'negligently' swearing out a warrant for arrest. Such cases may be brought only in the form of civil suits for malicious prosecution." *Hickman v. Barclay's Int'l Realty, Inc.*, 16 So. 3d 154, 156 (Fla. 4th DCA 2009) (citation modified). In the instant case, Plaintiff sues Defendant DFS for negligent investigation related to criminal prosecution in Count II and is already bringing a malicious prosecution claim against Defendant Perrault in Count I. Dkt. 35 at 15, 18.

and proper investigation into the veracity of the facts related to the First Criminal Prosecution, including the information provided by Perrault, to ensure probable cause existed prior to referring [Plaintiff] for prosecution." Dkt. 20 ¶ 72. The Court previously rejected "this conclusory statement" for failing to provide any supporting "factual allegations." Dkt. 34 at 9. Now, in the Second Amended Complaint, Plaintiff duplicates his original sentence and only adds that "DFS . . . never alerted the Office of the State Attorney that the Affidavit and corresponding charging documents were based on false facts" and that "State Attorney's decision to prosecute [Plaintiff's] Criminal Case was based on a fiction that was never disclosed[.]" Dkt. 35 ¶ 70. Again, these additions are not supported by any factual allegations that Defendant DFS actually knew that the "charging documents were based on false facts" and still failed to alert the State Attorney's Office. *Id.*[5]

Second, Plaintiff argues that Defendant DFS placed him within the second and third *Pollock* zones of risk when he "was arrested, taken into police custody, detained, jailed, and prosecuted based on the . . . alleged crimes[.]" Dkt. 35 ¶ 64. It is true that "[t]he courts of [Florida] have long recognized that law enforcement owes a duty of care for the safety of those persons taken into custody." *Williams v. Tony*,

---

[5] Plaintiff's response claims that "[t]he knowledge of Perrault and his DFS colleagues is directly imputed to DFS as their employer." Dkt. 41 at 9 (citing *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1180 (11th Cir. 2025)). However, *Otto Candies* is inapposite, as the case involved a common-law aiding-and-abetting fraud claim that addressed whether an employee's knowledge can be imputed to the employer in the corporate-fraud context to satisfy the heightened Rule 9(b) pleading standard. *See Otto Candies*, 137 F.4th at 1179–80. The instant negligent investigation claim, in the context of governmental tort liability, presents a completely different factual and legal landscape from *Otto Candies*.

319 So. 3d 653, 655 (Fla. 4th DCA 2021) (citation omitted). However, as Defendant DFS correctly notes, the Second Amended Complaint "does not allege that DFS took any of these actions." Dkt. 40 at 6. Plaintiff cannot impute his arrest onto Defendant DFS without alleging that DFS employees arrested him. "[A] duty requires one to be in a position to 'control the risk.'" *Saunders v. Baseball Factory, Inc.*, 361 So. 3d 365, 369 (Fla. 4th DCA 2023) (quoting *Surloff v. Regions Bank*, 179 So. 3d 472, 476 (Fla. 4th DCA 2015)); *see also Smith*, 2026 WL 1355623, at *4 ("But here, unlike in other cases where law enforcement action placed an individual in physical danger, 'DFS never took [Plaintiff] into custody, detained him, or otherwise subjected him to danger.'" (quoting *Black*, 2026 WL 772470, at *4)).

To be sure, it may be argued that Plaintiff's arrest was a foreseeable consequence of the submission of an allegedly false affidavit. However, "[a] legal duty does not exist merely because the harm in question was foreseeable—instead, the defendant's conduct must 'create' the risk." *Saunders*, 361 So. 3d at 369 (citation omitted). Because Plaintiff fails to sufficiently allege that DFS took him "into custody" or "detain[ed]" him, *see Pollock*, 882 So. 2d at 935 (citations omitted), he also fails to sufficiently plead that Defendant DFS placed him in a zone of risk.

Finally, the fourth *Pollock* scenario, "otherwise subjecting [someone] to danger," is also not applicable here for the same reasons outlined above. *Pollock*, 882 So. 2d at 935. Plaintiff's alleged harm is that he "had to pay substantial

12

attorneys' fees to defend the meritless . . . [p]rosecution, and he incurred significant emotional distress from the Criminal Case," Dkt. 35 ¶ 71, but these harms have little to do with a danger arising from his detention, arrest, and time in custody. Even if a danger arose, there are no allegations that DFS subjected him to arrest and detention.

Nor is DFS the agency that filed an information against Plaintiff and subjected him to criminal prosecution. Dkt. 35 ¶ 9 ("[T]he Office of the State Attorney . . . file[d] charges against [Plaintiff] for serious felony crimes."). As such, Plaintiff fails to sufficiently allege DFS subjected him to any danger following the submission of the allegedly false affidavit. *See Trujillo*, 2009 WL 10697035, at *5 (finding a plaintiff's claims she was "investigated, arrested, and subjected to criminal prosecution" did not amount to "allegations that she was placed in danger" by the defendant Florida agencies). Consequently, Plaintiff fails to sufficiently plead that Defendant DFS placed him within a zone of risk. The Court finds that Plaintiffs failed to adequately plead a common law duty in Count II.

B. *The Court need not address sovereign immunity to dismiss the complaint.*

Separately, Defendant DFS raises a defense based on sovereign immunity. Dkt. 40 at 7. However, because Plaintiff fails to sufficiently plead allegations that give rise to a duty of care, the Court need not address the sovereign immunity question. *See Pollock*, 882 So. 2d at 932 ("If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question

13

of whether the sovereign should be immune from suit need not be reached." (citation omitted)). Similarly, Defendant DFS's argument concerning immunity for employees' intentional conduct, Dkt. 40 at 12, and Plaintiff's claims regarding the public duty doctrine,[6] Dkt. 41 at 6–8, need not be addressed.

## II. The Court Dismisses Count II with Prejudice

Despite the opportunity to file a second amended complaint, Plaintiff has again failed to provide "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plaintiff is correct that courts should grant "leave to amend 'when justice so requires.'" *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)); *see* Dkt. 41 at 19 (asserting that Fed. R. Civ. Pro. 15(a) mandates leave to amend when justice so requires). However, where a plaintiff is given "fair notice of [his pleading's] defects and a meaningful chance to fix them," and he "fails to remedy the defects, the district court does not abuse its discretion in dismissing the case with prejudice on shotgun pleading grounds." *Jackson v. Bank*

---

[6] The public duty doctrine provides that "a governmental entity is not liable in tort for breaching a duty which the government owes to the public generally, as opposed to a special tort duty owed to a particular individual." *Lewis*, 260 F.3d at 1265 (quoting *Seguine v. City of Mia.*, 627 So. 2d 14, 17 (Fla. 3d DCA 1993) (internal quotation marks omitted)). The Eleventh Circuit has noted that "the Florida Supreme Court explicitly held that the public duty doctrine has no continuing vitality under Florida law subsequent to the effective date of Fla. Stat. § 768.28." *Id.* (citing *Com. Carrier Corp. v. Indian River Cnty*, 371 So.2d 1010, 1015 (Fla. 1979)). Yet, there is still "confusion surrounding the public duty doctrine . . . stem[ming] in part from the doctrine's inherent relation to the [still-existing] 'discretionary' act exception to Florida's waiver of sovereign immunity." *Id.* at 1266. Since this Court never reaches the sovereign immunity question, the public duty doctrine need not be considered.

*of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018). The Eleventh Circuit has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor [has it] concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016).

Here, Plaintiff received notice of defects in his prior complaint, *see* Dkt. 34, amended his complaint, *see* Dkt. 35, and has still "fail[ed] to remedy the defects" of the prior complaint. *Jackson*, 898 F.3d at 1358; *see* Dkt. 34 at 11 (dismissing for Plaintiff's "fail[ure] to allege that a common law duty arose from DFS's alleged failure 'to conduct a diligent and proper investigation'" (citing Dkt. 20 ¶ 72)). Accordingly, Plaintiff's negligent investigation claim in Count II is dismissed with prejudice.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant DFS's Motion to Dismiss Count II, Dkt. 40, is **GRANTED**.

2. Plaintiff Black's negligent investigation claim in Count II, Dkt. 35 at 18,

   is **DISMISSED with prejudice.**

3. The Clerk is directed to **TERMINATE** Defendant DFS from this case.

**DONE AND ORDERED** at Tampa, Florida, on June 23, 2026.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

16